**Matter of W. H. CALDER COMPANY, Inc., Bankrupt.**
**No. 2767, In Bankruptcy.**

United States District Court
E. D. North Carolina, Raleigh Division.
Nov. 27, 1956.

R. L. McMillan, Jr., Raleigh, N. C., for creditor Atlas Supply Co.

A. L. Purrington, Jr., Raleigh, N. C., for trustee.

GILLIAM, District Judge.

At the final meeting of creditors the Referee entered an order disallowing the

claim of Atlas Supply Company for the reason that it was not formally filed within six months after the first date set for the first meeting of creditors. This creditor has filed petition for review of this order.

Section 93, Title 11 U.S.C.A. governing proof and allowance of claims, contains these provisions: "(a) a proof of claim shall consist of a statement under oath, in writing and signed by a creditor, setting forth the claim; * * * (n) except as otherwise provided * * * all claims provable under this title * * * shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed * * *."

A formal claim was not filed within the six months period, but the creditor prays the Court in its discretion to allow its amended proof of claim which was filed after such period, and does comply with Section 93.

No controversy appears with regard to the facts upon which the creditor bases his prayer and they are thus set forth as found by the Referee in the minutes of the Final Meeting of Creditors:

"This creditor obtained a judgment against the bankrupt on October 21, 1953 in the Superior Court of Forsyth County. The judgment was thereafter duly docketed in Wake County, and execution was thereafter duly issued thereon. Under said execution, on December 14, 1953, the Sheriff of Wake County took possession of the bankrupt's property, locked said property up, and retained possession of the keys. Pursuant to said levy under execution, the Sheriff duly advertised said property for sale on January 14, 1954. Two days prior to said advertised sale, to-wit on January 12, 1954, an involuntary petition in bankruptcy was filed against the debtor. As a result thereof the Sheriff did not go through with the sale and subsequently surrendered the keys of the premises to the Trustee in Bankruptcy, who, in the course of administration, later liquidated the property.

"Initially the creditor was represented by Winfield Blackwell, Attorney at Law in Winston-Salem, N. C. Upon the filing of the petition in bankruptcy, Mr. Blackwell attempted to engage Mr. Charles A. Poe, Attorney at Law, Raleigh, N. C., to represent the creditor in the proceeding and to that end sent a file to Mr. Poe. Mr. Poe could not act because he is a law partner of the Referee, and so informed Mr. Blackwell. In this situation, Mr. Blackwell informed Mr. Poe that he would retain Mr. Robert L. McMillan, Jr. to represent the creditor in this case and asked Mr. Poe to turn his papers over to Mr. McMillan. This was done, and pursuant to his employment, Mr. McMillan appeared at the first meeting of creditors on behalf of the creditor, and actively participated in the hearing. All those present knew of his representation of Atlas Supply Company. Mr. J. J. Fyne was present at the first meeting of creditors where he was then and there elected Trustee and he proceeded to administer and liquidate the estate. He also was aware of the claim of Atlas Supply Company and of the representation of that creditor by Mr. McMillan. As a result of the confusion occasioned by the necessity for changing attorneys, no claim was filed on behalf of the creditor within the six months period following the first meeting of creditors. However, during that six months period, Mr. McMillan, as attorney for this creditor, addressed a letter to Mr. Purrington as attorney for the Trustee in regard to certain matters in connection with the administration of the estate. After the six month period for filing claims had expired, the creditor filed a claim on September 7, 1956, and now asks that it be allowed as an amendment to its claim known to and recognized by the Trustee during the six months period for filing claims. In addition the creditor also takes the position and asserts that it has a valid lien that must be protected whether or not a claim was filed."

It appears from the decisions that "with few exceptions the time requirement for the filing of claims is regarded as more than a mere limitation. It is held to be a prohibition upon the right to file after the expiration of the period. The result is that failure to file within the period defeats the right to file, although the failure was attended with such circumstances as would prevent the running of an ordinary statute of limitations, or would ordinarily constitute an excuse for noncompliance with the time limitations." 6 Am.Jur., Bankruptcy, Section 458.

It also appears from the decisions that the "limitation of time prescribed for the filing of the proofs of claim does not preclude the filing of an amendment to a proof after the expiration of the period, provided the amendment does not introduce a distinctly new and different claim * * *" but "(T)he right to amend can go no further than to bring forward and make effective that which, in some form, was asserted in the original claim." 6 Am. Jur., Bankruptcy, Section 499.

While the courts have been rather strict in their interpretation of the statute fixing a time limit for the filing of claims and slow to permit the filing thereafter, generally speaking, these cases have dealt with factual situations, showing that no claim of any nature, or notice of claim had been made, and the prayer to be allowed to file thereafter was based on facts tending to excuse such failure. In this case, claim and notice were in effect given at the first meeting of creditors, when the creditor's attorney appeared as its representative and actively participated in the meeting; all persons present knew of such representation and knew the amount of the creditor's claim, since it had been reduced to judgment and was, therefore, a matter of public record; the Trustee, who was elected as Trustee at this meeting, knew of the claim of Atlas Supply Co., the nature of it, the amount of it, and also that such creditor was represented by R. L. McMillan, Jr., who appeared in behalf of such creditor; also, well within the statutory time limit, such attorney wrote to the attorney for the Trustee referring to his client's claim and giving suggestions for the proper administration of the estate.

Of course, the facts just outlined do not constitute literal compliance with the statute, but to my mind it does show such a substantial compliance as to permit the creditor after the expiration of the statutory period to file a formal claim in conformance with the statute. The formal claim does not "introduce a new and different claim", but only "serves to make effective that which, in some form, was asserted in the original claim" which was ineffective solely because it failed to comply literally with the statute.

The holding in In re Patterson-MacDonald Shipbuilding Co., 9 Cir., 293 F. 190, seems to support my conclusion. Head-note 2 reads: "A letter written to a trustee * * * inclosing official statement of delinquent taxes on the property, which under the lease the bankrupt was obligated to pay, and asking their payment, held to contain the essentials of a claim against the estate, sufficient to permit its amendment into a formal claim when more than a year after the adjudication, the trustee surrendered the leased premises." See page 192: "That the letter sets out, and was intended as, a claim against the estate, seems clear. * * * True, it does not 'meet the requirement' of the statutory proof of claim. But that is the justification for and not a bar to the amendment. It does, however, meet most of the requirements and contain most of the essentials prescribed by statute and order in proof of claim— enough of both to give to the letter the substance of a proof of claim, and to warrant amendment to supply the absent items of proof."

Other cases have been brought to my attention which seem to justify in this case a departure from the general rule of strict interpretation of the statutory requirement for filing formal claims. In

the case of In re Quality Publications, D.C., 12 F.Supp. 651, the Court permitted amended proof of claim after the statutory period when it appeared that within the period at the first meeting of creditors an officer of the creditor corporation stated that the bankrupt owed his firm money and offered a ledger sheet in support.

The case of Scottsville Nat. Bank of Scottsville, Va. v. Gilmer, 4 Cir., 37 F.2d 227, also affords support and in several respects is like this case. The Bank secured a judgment against one Pitts; thereafter Pitts filed a voluntary petition and was adjudged a bankrupt; his schedule listed the Bank's debt; one Gilmer was elected Trustee and there ensued certain correspondence between the Trustee and the Bank relating to the Bank's debt and the administration of the estate; during the course of the administration the officers and the attorney of the Bank cooperated with and assisted the Trustee; it was discovered after expiration of the statutory period that no formal claim had been filed and formal claim was then filed; it was allowed by the Referee but the District Court overruled him; upon appeal the District Court was reversed. On page 229 these observations appear: "In considering the questions involved, we are met at the very outset with the fact that the claim of the bank is an equitable one to the very highest degree. * * * The bankruptcy court is a court of equity, and endeavors wherever possible to do equity, and the trend of modern decisions is uniformly toward the greatest liberality in the allowance of the filing of amended proofs of claim, where there is anything in the record to justify such course of action. It would be harsh and inequitable to refuse the relief upon the statement of facts above recited if there were power to grant it."

In Globe Indemnity Co. of Newark, N. J. v. Keeble, 4 Cir., 20 F.2d 84, 86, it is stated: "The rule may be stated as being that such amendment will be allowed if, in the opinion of the courts, such a course is in furtherance of justice." See also Collier on Bankruptcy, 14th Edition, Vol. 3, page 324.

As said by the creditor's attorney in his brief: "In the instant case there is on record a letter within the statutory period to the trustee's attorney * * *. (I)t is agreed that there was discussion between the trustee and the attorney for this creditor relative to progress and relative to the outlook for payment of this creditor's claim; * * * and there is the additional factor of the surrender by the Sheriff of Wake County under the execution pursuant to this creditor's judgment of the property of the bankrupt to the bankruptcy court and the trustee. * * * As to the rightness of this creditor's claim and as to the knowledge of its existence, there can be no question raised by any person. The Court and the Trustee were cognizant of the claim from the outset of the bankruptcy. Indeed, the bankruptcy court would have had nothing to administer except debts had the Trustee not obtained all the property in the hands of the Wake County Sheriff, which property was in said Sheriff's hands by virtue of the execution pursuant to this creditor's judgment * * * and to this extent the judgment was a lien of record with all subsequently interested parties being put on notice by virtue of the judgment's being on the public record."

In my opinion, it would "be harsh and inequitable to refuse the relief upon the statements of facts above recited" and to allow the relief is "in furtherance of justice".

The Order of the Referee is reversed.